We'll start with 22-1325. I'm not going to have a Cote or Bacote. Bacote. Bacote versus the Federal Bureau of Prisons. You may proceed. Ms. Tuey. Good morning and may it please the Court. My name is Katie Tuey and I am a student attorney representing Mr. Michael Bacote, Jr., the appellant in this case. I'm joined today by Laura Rovner, my supervising attorney. Throughout Mr. Bacote's incarceration, the Bureau of Prisons has held him in prolonged solitary confinement, ignored his well-documented history of serious mental illness and his intellectual disability, and denied him reasonable disability accommodations. The District Court's errors in this case stem from its misinterpretation of the legal release and the Cunningham v. Bureau of Prisons settlement agreement. The District Court erroneously found Mr. Bacote's Section 504 and solitary confinement claims to be barred by the release and erroneously limited Mr. Bacote's Eighth Amendment diagnosis claim to a judicial determination of a mental health diagnosis. The District Court left Mr. Bacote with no redress for BOP's daily, ongoing violation of his rights. Today, we ask that this Court find that Mr. Bacote's claims are not moot nor barred by the Cunningham agreement and allow his claims to proceed in full on remand at the District Court. So, Counsel, even if we agree with your interpretation of the Cunningham agreement, aren't his claims as pled right now moot because he's been moved? Transfer out of ADX is not the only relief that Mr. Bacote is seeking. He is still seeking relief from solitary confinement as an individual with serious mental illness and intellectual disability, as well as reasonable disability accommodations under Section 504. Okay, so tell me on the allegations in the complaint, though, they're all directed in reference to ADX. Mr. Bacote's complaint necessarily discusses the conditions at ADX, as that is where he is housed. However, we are seeking injunctive relief in alleged ongoing harm, and it is the BOP's heavy burden to demonstrate that there is, quote, absolutely no relief that this Court can grant, as discussed in Res. Act finale. BOP has not met that burden here today and has not demonstrated, based on the information in the record, that the harm is not ongoing. Well, we have his declaration, Mr. Bacote's declaration, as far as how he's being treated at USP Allentown. Why is it not better for him to simply file a lawsuit there and start over? Because we don't know, and we may not be the right forum. Requiring Mr. Bacote to start this case over again would be unjust and prudent ways in favor of allowing Mr. Bacote to continue litigating this case. Mr. Bacote's case is against the BOP as an entity, and he is still being housed at BOP. While he has been transferred to Allentown and is out of ADX, the laws might be different, but the harm is still the same to him, as seen in his declaration. Well, why would that, I mean, why would it be harder for him? Because, as it stands right now, you have a complaint, your active complaint, or at least the one that was active at the time of dismissal, doesn't have any references to his current confinement. Your proposed amended complaint doesn't have any references to his current confinement, so you're going to have to file a new complaint anyway. So why is it burdensome on him just to file a new case? This litigation has been ongoing for nearly seven years, and Mr. Bacote has been waiting for relief from BOP for nearly seven years. Requiring him to start all the way back at square one would be unjust. I mean, that's where he's starting, though. He's going to file an amended complaint. That starts everything over, doesn't it? There still would be information in the record. The record is extensive in this case already. And on remand, Mr. Bacote would request that his claims proceed, pass the motion to dismiss the case. Well, but one of my concerns is if the case continues in this court and we reach a decision regarding some of the relief he's entitled to, and then I think he's within, is it Indiana? Pennsylvania. Okay, so the Third Circuit may have a different view of the law. And then we've got a real problem. Shouldn't it be in that court, in that circuit? And I guess I don't see all the great prejudice to him. If he were sufficiently prejudiced, that would be an important consideration. I don't think this is Article III mootness we're talking about. Now the word escapes me. Prudential? Prudential mootness, yes. And that seems to be a doctrine that would apply quite properly here. It seems to fit all the requirements for prudential mootness. Well, Your Honor, prudential mootness is not appropriate here. As this Court discussed in Winslow v. Toyota Motor Sales, prudential mootness requires a remedial promise or assurance of relief. And in fact, that has not happened here. BOP has consistently denied any violations of Mr. Bacote's rights, and therefore it's impossible for BOP to provide a remedial assurance of relief, and therefore requiring Mr. Bacote to start over again would be unjust. But starting over again, he'd be in an easier position. You wouldn't be going through the underbrush here of what does Paragraph 73 say and how does that relate to Paragraph 79 and so forth and so on. He could just make his claims. He could say, I'm being held in solitary confinement still, or he could not say that if he's not. Again, Mr. Bacote's case is against the BOP as a national entity, not against specific officials at ADX. So what if he had not been incarcerated at ADX? Would you contend that you could file suit here because BOP is a national entity? Then he was proper at the time of filing the initial complaint, and that's why he filed here, Your Honor. Further, Mr. Bacote's claims are not barred by the Cunningham Agreement for three different reasons. Before you go there, let me ask you a question. So if venue is proper here at time of initial filings, but the basis for the complaint is undermined by a transfer or release or something like that where Mr. Bacote starts residing in a different jurisdiction, does the venue remain, even if the underlying premises of the original venue disappear, does the venue remain proper? Well, Your Honor, transfer alone cannot moot an incarcerated plaintiff's claims, as this Court has discussed in a dual seat. In that case, the plaintiff was incarcerated at one Oklahoma facility and then was transferred to another Oklahoma Department of Corrections facility. And this Court found that the case was not moot because he was still being denied access to a religious diet at the new facility. Therefore, Mr. Bacote's claims against the BOP as an entity are not moot, nor credentially moot because he is alleging ongoing harm at Allenwood by BOP. Right. I guess I want you to assume that the underpinnings of your current case are gone. And let's even say that it's not moot. That it's not moot, but that he's not in the jurisdiction anymore. That his current complaint is to confinement in Pennsylvania. Even though your venue was proper at the time you filed, is it still proper upon him being transferred to Pennsylvania? Yes, Your Honor, venue remains proper here. Tell me your case for that. Do you have one? For example, and I'm doing this again, the plaintiff was transferred. Or, for example, in Chapman v. Bureau of Prisons, the plaintiff was transferred from ADX to another BOP facility. However, the case remained in the District of Colorado. If BOP could just transfer a plaintiff anytime and then moot the case, it would prevent the plaintiffs from seeking their day in court and having their case heard. And it's no small thing to deprive this Court of its jurisdiction. So I guess the problem I have with that argument is that that would be true if it was, if your complaint was directed at BOP in general. But in this case, your complaint was directed at BOP's treatment of him at ADX specifically. Again, Your Honor, the harm that is facing Mr. Vaco at Allinwood is the same as seen in his motion to supplement the record. In his affidavit, he alleges the same harm that is in the complaint. And though he's in a different facility, he is still being held in solitary confinement and being denied reasonable disability accommodations. Therefore, the harm is ongoing. And because we are seeking injunctive relief, we should be allowed to proceed in this court. What relief could you get that would not be directed at a facility prison within another circuit? So that facility could be subject to conflicting decisions by this circuit and the circuit that governs it. What relief are you seeking that would not present that possibility? Well, Your Honor, relief would be tailored and directed at the BOP as an entity, not specific officials. This is unlike Jordan v. Sosa, where the plaintiff is suing specific officials at ADX and then his transfer muted the case because this court could not provide relief against those specific ADX officials where he was no longer housed. Here we are seeking relief from BOP as an entity, and therefore, the transfer does not mute Mr. Van Cote's case and we can still seek relief from BOP. Well, ultimately there would be an order saying BOP has to do this with respect to your client at this facility in Pennsylvania. And somebody, another prisoner at that facility could seek relief through the courts and get a decision after, say, appeal to the Third Circuit that would contradict our direction. Comfort me that that can't happen because that's one reason why we may not want to be the court where this is ultimately decided. Well, Your Honor, again, we're seeking relief against BOP as an entity, and therefore this relief would not be binding Extra Circuit officials. It would be binding BOP as a national entity. But the prison would be given directives with respect to two different prisoners that are inconsistent with one another. That doesn't seem like a very good way to run a prison. Well, respectfully, BOP would be giving those directions to the officials at that facility, and therefore it wouldn't be this court directing the facility to do something different. It would be BOP, and this court has jurisdiction over the BOP. What if Mr. Van Cote lost here? Would he still be able to bring action in Pennsylvania against BOP? It would be unjust to require Mr. Van Cote to litigate, start over. No, I'm not asking if it would be unjust. I'm asking if he even can. If he loses in this court, does he have the ability to continue to litigate elsewhere based on your statement that your suit is against BOP right now and across the board? It is my understanding that, yes, he would be able to file suit in Pennsylvania. However, again, requiring Mr. Van Cote to start over as an illiterate plaintiff who's incarcerated in a district of Pennsylvania would be unjust. Well, he's represented by counsel, so the fact that he's illiterate doesn't really work an injustice on him, does it? Because we're not forcing him to file his own pleadings and presumably use a jailhouse lawyer, that type of thing. That is true. Okay. Again, I would like to briefly turn to the Cunningham Agreement and discuss why Mr. Van Cote's claims are not barred. First, Mr. Van Cote properly exercised his right not to be bound under the Class Action Fairness Act as the BOP entirely defaulted on the notice requirements. Second, the legal release found in Paragraph 73 of the Cunningham Agreement expired in December of 2019 at the end of the compliance period, and therefore Mr. Van Cote's claims which allege ongoing daily harm are no longer barred. And even the plain language of the release found in Paragraph 73 does not bar Mr. Van Cote's claims as he's seeking individualized relief that does not pertain to the treatment of ADX and made mental health. Were his claims barred at the time he filed his lawsuit? That's too broad. You can answer that one too quickly. Insofar as the time for him being bound by the settlement agreement had passed, was that true when he first filed his complaint? Mr. Baker, it was not bound by the agreement when he filed his complaint and therefore was not barred by the release. I understand that. I'm talking about your timing point because you said the timing only lasted for three years, right? And so my question is, did he file his initial complaint within the three-year period or did he file the initial complaint after the three-year period had passed? His initial complaint was filed during the compliance period. However, the plain language of the legal release does not bar Mr. Van Cote's claims. He's seeking relief that is individualized to him. He's not seeking systemic relief, and none of the relief he seeks pertains to the treatment of ADX and made mental health. On that point, as far as paragraph 73 and systemic versus individual relief, your position is that paragraph 73 only bars systemic relief. Is that right? Yes, Your Honor. Reading the contract as a whole, paragraph 79— Well, let's stick with 73 for just a moment because there are three exceptions there. One of which is any claim by any inmate or a judicial determination concerning the inmate singular, inmate's personal mental health diagnosis. And so if the rest of it, if the main body of paragraph 73 is only systemic, why would we have an exception for an individual claim? Even reading paragraph 73 in isolation from the rest of the agreement, Mr. Van Cote's claims are not barred because none of the relief he seeks pertains— Okay. Are you conceding my point, then, that on paragraph 73 it doesn't apply solely to systemic and now we're moving to paragraph 79? No, Your Honor. I would read it to only bar systemic relief. Okay. And can you address my point, which is the exception speaks about an individual claim. Why would you need to have an exception marking out an individual claim if the body only bars systemic claims? That's what I don't understand about that argument. Even looking to, for example, the Fairness Hearing, Judge Meech's reading of the agreement sees it as barring only relief that was systemic. At the Fairness Hearing, Judge Meech said, quote, I understand if any particular event should occur which an inmate considers himself deemed to have been mistreated and in violation of the Eighth Amendment, I don't see the settlement agreement excuses possible misconduct. Therefore, even looking at Judge Meech's understanding of the agreement does not bar individualized claims. And I see I'm out of time. Don't worry about that. Okay. Do you have any questions? No. I'm sorry. Thank you. Do you have any questions on— Did you have another argument on the merits that you had planned to present to us? We would just request that this court on remand instruct the district court to find out there is a private right of action under Section 504 to sue federal executive agencies for injunctive relief, as seen in the plain language of the statute, Your Honor. Thank you, Counsel. Thank you. May it please the Court, Kyle Brenton for the Federal Bureau of Prisons. And I don't want to hijack your argument, but I don't want to forget the last point that was raised there, which is the 504 on the private right of action. Does the government concede at this point that the district court was mistaken in that regard, just so I'm clear? Your Honor, the government has waived reliance on that portion of the district court's order. Obviously, that claim is barred under both the Cunningham Agreement, and it's also moot based on his transfer. But we have waived reliance on that portion of the district court's opinion. That's correct. Presented with expert psychologist reports based on new testing of Mr. Bacow. So just so we're clear on that one. Yes, Your Honor. You're not agreeing that there's a private right of action, but you're not contesting it? Essentially, that's correct. Okay, fair enough. That's correct. BOP did the right thing here. Well, what if we were to rule that there's not a private right of action? Would you feel like we'd overstepped your concession? In other words, I understand why you want to keep that powder dry for another day, but we may not want to. And so when you come in and you say, we're not contesting it, but we're not admitting it, you stand to lose on that ground. I appreciate that, Your Honor. Certainly, the court in its discretion can do what it feels is appropriate. We are not relying on that portion of the district court's order, and that's about as far as I'm able to get without getting over my skis, Your Honor. So I'll cut right to the heart of it. This case is mooted by the transfer. And we've obviously presented our arguments on Article III mootness in the brief, and we stand on those arguments, happy to answer any questions. But I think that Judge Hart's question about prudential mootness really goes right to the heart of why the claims are mooted. Well, let me ask you something beforehand. Absolutely. Are you familiar with our decision in the United States versus Winter Rose Old Rock from last year? I don't have that one at the tip of my tongue, Your Honor. Well, did you file a motion to dismiss on mootness or prudential mootness? We did not file a freestanding motion, no. We argued mootness in our opening brief. Well, the Winter Rose Old Rock decision interpreted our local rule 27.3 to say if you don't file a motion to dismiss under our rule before filing your briefs, then you've waived that right? As I say, Your Honor, I'm not familiar with that opinion, happy to address it in a supplemental brief or supplemental submission to the court. But it may be that we're barred from even considering mootness or prudential mootness. So that's not an issue that you've noted. I mean, I think that, Your Honor, that mootness goes to the subject matter jurisdiction of the court. Not prudential mootness. Is it prudential mootness? Prudential mootness does not go to the subject matter jurisdiction of the court. That's correct, Your Honor. And that's your better argument. It may appear so to the court, yes. I think both arguments are strong. But go ahead with your argument on prudential mootness and mootness. But you may have waived. Absolutely. And thank you for that, Your Honor. I'll give you the site. Let's see. 76, Federal Reporter 4, 1314. It was decided on August 11th of last year. Thank you, Your Honor. We will certainly address that via a supplemental submission. The aspects of this case that render it particularly appropriate for prudential mootness are, as Judge Carson recognized, all of the facts in the complaint that relate to Mr. Bacon's confinement and treatment relate specifically to ADX. He is no longer in ADX. He is now in a different circuit where the individuals with custody over him may be subject to conflicting rulings from the Third Circuit versus this court. And any facts related to his incarceration at Allenwood would be subject to the PLRA's exhaustion requirement. These are all very good reasons why, even if the court finds that some piece of his claims survive the Article III mootness analysis, they should still be dismissed under prudential mootness. Now, that's interesting about the exhaustion of administrative remedies requirement. That could be used to play games against a prisoner who's got a legitimate claim and they just keep transferring, so the next violation has to restart a new litigation. How do you address the unfairness, at least the possibility of unfairness there? Well, I don't think that that's the case, Your Honor. And I think it goes back to where a prisoner is seeking only prospective relief and they are transferred. What do they need in order to escape a mootness finding? And I think based, looking at Jordan, looking at Abdul Hasib, I think they really need two things. One thing is some policy that applies at a level higher than the institution that they are at, that shows that they are likely to be subject to the same conditions in their new facility. And the other is to have sued the appropriate defendants. Now, obviously, that second part is not an issue in this case, but the first part is, the only nationwide policy that Mr. Bacow relied on in his complaint is the treatment and care of inmates with mental illness, but the violation of that policy was keeping him at ADX regardless of his severe mental illness. That's no longer the case. So I think, in Your Honor's hypothetical, I think that if a prisoner has pleaded truly a system-wide violation, as the prisoner in Abdul Hasib did, then I think transfer does not moot the claims, as long as they've sued the appropriate defendants as well. So I don't think that where the violation truly is at a higher level, I don't think that there would be a further exhaustion requirement. But where the facts of the claim are necessarily specific to the institution, I think that there is an exhaustion requirement at a new facility. Because, and again, the purpose of exhaustion is not to throw up hurdles before a litigant. The purpose of exhaustion is to give the agency a chance to address the alleged violation first. So requiring exhaustion where the new violation truly is specific to the new institution, it only makes sense. So in your opinion, if the allegation was, I'm not receiving the proper treatment and conditions of confinement at ADX, and the BOP has no facility capable of providing them, then that might not be moot, just because you moved him. I think that might not be moot, Your Honor. I don't think that that's our case here. I agree. I don't think that further allegation is in this case. So I think that question could await another day. But I think that case certainly might not be moot. Okay. I'm just trying to explain. Because I take Judge Hartz's point as one that is worth exploring. Because if you have somebody with a claim about a certain prison, the inclination might be, let's move them. Absolutely. Then they're not complaining about this prison anymore. And at some point, it's an evasive move to not deal with the problem, but to deal with the lawsuit. And I understand that concern, Your Honor. But I think in this case specifically, I think it is entirely inconsistent with what occurred on the ground to suggest that Mr. Banco was moved strategically to deprive this court of jurisdiction. Mr. Banco was moved because the BOP agreed with his experts that his diagnosis needed to be changed. Once his diagnosis was elevated to a severe mental illness diagnosis, under the BOP's standing procedures that apply to every single inmate in this country, he could no longer be placed at ADX absent extraordinary security concerns, which were not present. So he was simply moved by operation of those ordinary policies. And, again, I think when we're talking about mootness, there's arguments in the briefs about voluntary cessation. Is he likely to be moved back? Well, even if his diagnosis were changed, first of all, his diagnosis would have to be changed, and that would be based on process. And there would be an ability for him to challenge those things in Pennsylvania in the Third Circuit. Well, the diagnosis changed or some finding of great national security interest or something like that. Didn't you say with his diagnosis, he couldn't stay at ADX absent? Extraordinary security concerns that cannot be managed elsewhere is the term from the policy, Your Honor. Yes. But, again, BOP stipulated in this case that no such concerns were present as of his transfer. So any such concerns would need to be based on new and, frankly, unforeseeable events. Mr. Bacon was not transferred as a litigation tactic. And I just think that to suggest otherwise, it completely misconstrues what happened in this case. I guess nobody here has suggested that you did it for litigation purposes, but that the rule you're advocating for could lead to that, and that is something that should be considered. Well, I think that we are simply advocating for application of the law as it stands, Your Honor, and so that would be where I would come out on that. Regarding mootness, does it matter who the defendant is? In other words, Jordan case individuals' defendants are sued, and accordingly the transfer mooted it. But here it's the BOP that's sued, which is, of course, goes much further than an individual does. I think it matters, Your Honor, absolutely. As I said, I think that an inmate has to have two things. They have to have a policy that applies at above the level of their own institution, and I think they have to have sued the correct defendants. And so you concede the second one? Yes, absolutely. The appropriate defendants or not point that was disposited in Jordan is not present here, no. I'd like to move on and discuss the Cunningham release, if I could, because I think that's really, once we're past the question of mootness, I think that's the beating heart of this case. Mr. Baycoat obviously is a class member in Cunningham. He was the original named plaintiff in Cunningham, so he is bound by the release Cunningham was a 23B2 class action, so there's no right to opt out under the federal rules. The release, which is contained in its entirety in paragraph 73 of the agreement, bars claims, quote, that have been asserted in this litigation or that pertain to the treatment of ADX inmates' mental health. Now, all of Baycoat's claims that are on appeal here fall within the scope of this release. And I think the clearest way to see that is to look at paragraph 76 of the complaint. How does a solitary confinement claim fit within this language? Absolutely, Your Honor. I think there are a couple of different ways that arguments that show that the solitary confinement claim falls within this language. The first is what I was just discussing, which is paragraph 76 of the complaint. Paragraph 76 is his prayer for relief. It applies on its face to all four claims, three of which are on appeal. It's got several subparagraphs, and two of those subparagraphs, C and E, specifically talk about retaliation, he didn't appeal retaliation. But every single one of the other subparagraphs, A, B, D, and F, use the word treatment and seek relief related to his treatment. Specifically, seek declarations that he's been inadequately treated, that his treatment violates the Eighth Amendment, that he needs to be transferred to a facility that can treat him, and seeking a specific kind of treatment. So I think as to all the claims, the relief that he's seeking, the thing he's actually asking the court to give him, pertains to treatment. Solitary confinement pertains to treatment how? I'm still searching for that. Well, I think, yes, Your Honor. So I think the first argument is on that solitary confinement claim, he has only asked for relief based on the treatment. So I think that that's my first response. The second response is that the release bars claims brought in Cunningham and claims that pertain to mental health treatment. Now the claims in Cunningham were that housing inmates with serious mental illness at ADX violates the Eighth Amendment. That is essentially the same claim that he brought here. So the solitary confinement claim is substantially the same as the claims brought in Cunningham. You're saying it's the way he pleaded it. Yes. And that the way he pleaded it was that with his conditions, that made solitary confinement particularly bad. That's exactly right, Your Honor. His untreated mental illness harms him. Because of his untreated mental illness, and this is right out of the district court's order, the solitary confinement treatments at ADX harms him in a particular way that it does not harm other inmates. And so that is a claim that pertains to treatment, particularly in light of the fact that the relief that he's seeking on that claim is all declarations and injunctions about his treatment. So it comes down to the elasticity of pertains to. Absolutely, Your Honor. And I think the law is absolutely clear, particularly in Colorado, pertains to is a very broad term. And I think it's appropriate to apply it broadly. Now I think we've got a couple of contract, we've got the Class Action Fairness Act argument, and we've got a couple of contract interpretation arguments. I know I say I have very little time left. Whichever of those points the court is concerned about, I'm happy to address. I think that the release is contained entirely in paragraph 73. Paragraph 79 does something entirely different, which is dictating how the release can be used in evidence in other cases with other parties. I think Judge Phillips' question about individual versus systemic in light of the three exceptions in 73 is right on the money. The point about the duration of the release is absolutely waived. They made that argument in their response to the motion to dismiss. The magistrate judge rejected it in the recommendation. They did not make that argument in their objection to the recommendation. And the district court noted that failure. So that is an open and shut firm waiver situation with regard to paragraph 82 and the duration of the release. I see my time is up. Let me ask you a couple of questions about that. Absolutely. The district court, as I understood it, said that one of the requests made for relief that wasn't barred by the settlement was the request for assistance with filing administrative grievances. Why do you think that was barred by the release? Absolutely, Your Honor. I think for a couple of reasons. First, if you read the complaint carefully, that request is in paragraph 65 of the complaint. If you read the complaint carefully, he's not asking the court to order that he get any particular assistance with the grievance process. He's saying, I asked BOP for this. They didn't give it to me. That violated the Rehabilitation Act. But when you get to the relief he requested, he didn't ask for that objection. So I think that that list of denied accommodations from the past is not something that he's asking the court to grant him relief on now. But the district court thought he was seeking that relief. The district court did think that, yes. Shouldn't we defer to that? Well, no, because I don't think that, I mean, this is on a motion to dismiss, so I don't think that the court defers in particular to any aspect of the district court's finding. But I also would say, I would point the court to the discussion of this issue in the opening brief around page 47. If the court can separate out what he wants in terms of access to programming, access to the grievance process from changes to his mental health treatment, then I think you're reading it, you're able to read it a lot more carefully than I can. Because the way that I see it, it has been pleaded. Those two things are identical. They even say in the brief that here the programming constitutes the treatment. That's from page 47 of the brief. The access to programming that he wants is simply improved mental health treatment. Those things are absolutely intertwined, and I think the breadth of the term pertained to shows that all the aspects of his Rehabilitation Act claim were barred by the rights. And I suspect you'd say the same thing with the district court's statement that he was requesting that he not be punished for behaviors that are Absolutely, Your Honor. How does that pertain to mental health treatment? Well, I think because, again, look to paragraph 76, look to the relief he's requesting on that claim. He's requesting changes to his treatment. And I think that what is the reason that he alleges he is acting out in a way that results in punishment is because he's not getting the treatment that he claims to need. So if he gets the treatment that he claims to need, he won't be punished for those things. But, again, we are, the treatments and the accommodations are so tightly tied up together that there's no way that the term pertains to does not sweep them both up. If we disagree with you on that, how does that affect your prudential mootness argument? Well, I think if you disagree that the Cunningham release barred the Section 504 claim altogether, that claim is still moot based on the transfer. All of the arguments we make with regard to the transfer apply with full force to all aspects of the Section 504 claim. So I think it's moot under Article III. To the extent the court disagrees with that, I think it's prudentially moot. Further questions? Thank you, counsel.  Your time expired. We went over a little bit with him. So I'll give you three minutes next. I'd like to give this court comfort that the district court does have the ability to hear this case, even though the Bureau of Prisons has transferred Mr. Bigcoat. First, venue is assessed at the time of filing, and venue is proper at the time of filing. For example, in Chapman v. Bureau of Prisons, that plaintiff was transferred from ADFs to, sorry, Terre Haute in Indiana, and the District Court of Indiana actually transferred the case back to the District of Colorado because it found venue improper in Indiana. Second, the district court can hear this case, and to hold otherwise would mean that he would have nowhere to have his case heard, as the BOP could transfer Mr. Bigcoat again, and then again deprive another federal court of its jurisdiction. Therefore, no plaintiff that is incarcerated could have their case heard on the merits, as the BOP has unilateral control over their location. Additionally, I'd like to briefly address the fact that Mr. Bigcoat's solitary confinement claim does not seek mental health treatment. He is seeking relief from the conditions of confinement as a seriously mentally ill and intellectually disabled incarcerated plaintiff. Is his solitary confinement claim intertwined with him being mentally ill? The Eighth Amendment treats different groups of people differently. For example, it's unconstitutional to execute someone with a serious mental illness. Similarly, it's unconstitutional to hold a seriously mentally ill plaintiff in solitary confinement because of the unique harms it has on people with serious mental illness. Okay. Sounds like that's yes. Yes, Your Honor. Okay. Additionally, I would like to address the accommodations that Mr. Bigcoat is seeking under Section 504. As this court noted, they are not intertwined with treatment. As discussed in Megater, an accommodation is an exception to, or a change in a rule that unduly burdens a disabled individual. For example, assistance with grievances and programming would allow Mr. Bigcoat to successfully participate in programming and prepare for life post-incarceration, which is the relief that he really is seeking here today. Allowing Mr. Bigcoat to access programming that other incarcerated people have would do so. And this accommodation would allow him to participate as he is unable to read, and most of the programming is in workbooks. Thank you. Thank you. Thank you. The case is submitted. Counselor, you're excused. Excellent arguments. I'd like to tell you a little story, if I could, involving Steve McAllister, who's a professor at the University of Kansas and taught appellate advocacy. He clerked for Chief Justice Rehnquist. And I heard this from a professor at another university, but McAllister confirmed this to me. He had a student arguing a case against him in the U.S. Supreme Court. The former student was the petitioner's attorney. And after she spoke for a moment, a minute or so, he scribbled a note and put it on her podium, which you wouldn't expect because that would be proper decorum of the Supreme Court. And what is going on here? And what he had written, still the professor talking to a student, said, slow down. So you do have to worry about the slow speed of the minds of the court at times. So that's something to keep in mind. But that was excellent. You should be very proud. Your teacher should be very proud. And you may now depart.